# UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

|  |  |
|---|---|
| In re: | Case No. 16-72070-SCS |
| LARRY RUSSELL APFEL, JR., | |
| *Debtor*. | Chapter 7 |

## MEMORANDUM OPINION

This matter came on for hearing on September 1, 2016, upon the Objection to Debtor's Claim of Homestead Exemptions (the "Exemptions Objection") filed by the Chapter 7 Trustee, Tom C. Smith, Jr. (the "Trustee"), on July 28, 2016, regarding exemptions claimed by the debtor, Larry Russell Apfel, Jr. (the "Debtor"), pursuant to Virginia Code Ann. § 65.2-531.[1]  A hearing on the Exemptions Objection was held on September 1, 2016, and continued to September 29, 2016, on the condition that the parties file a Stipulation of Facts at least ten days prior to the continued hearing date.  A Stipulation of Facts was timely filed on September 19, 2016.  On September 27, 2016, two days before the continued hearing date, the Trustee filed a Memorandum of Law (the "Memorandum") in support of the Exemptions Objection.  Upon the filing of the Memorandum, the Court continued the hearing generally and provided the Debtor the opportunity to file a response to the Trustee's Memorandum.  On October 17, 2016, the Debtor, by counsel, timely filed a Response to the Trustee's Memorandum (the "Response").  Upon review of the Memorandum and the Response, the Court took the matter under advisement.  The Court has jurisdiction over this

---

[1] As represented by the Trustee at the September 1, 2016 hearing and as set forth in the Stipulation of Facts, the Trustee withdrew his objections regarding the exemptions claimed by the Debtor in the Wells Fargo checking account and the Capital One 360 savings account.  The only objection remaining for the Court's consideration relates to a business loan the Debtor made to Pro Tax, LLC, using his workers' compensation proceeds.

proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. FINDINGS OF FACT

There are no disputed facts concerning the Trustee's Exemptions Objection. The Debtor, by counsel, and the Chapter 7 Trustee filed a Stipulation of Facts, which provides:

1. That in November 2015 the debtor settled a workman's compensation claim and received certain funds pursuant to the settlement in the amount of $138,865.89 ("WC Proceeds") which were deposited into debtor's checking account No.: XXXX6646 at Wells Fargo Bank, N.A., ("WF Checking Account") on November 17, 2015. A copy of the Order entered by the Virginia Workers' Compensation Commission in Case No.: VA00000614066 on November 5, 2015 is attached hereto as Exhibit 1.

2. That the debtor lent a portion of the WC Proceeds in the amount of $100,000.00 to Pro Tax, LLC, a Virginia limited liability company, ("Pro Tax") on November 20, 2015. Pro Tax is owned by Andrea Zank, who is the daughter of the debtor.

3. That Pro Tax executed a Promissory Note dated November 28, 2015 ("Note") which was signed by Andrea Zank as President of Pro Tax and received check number 5154 dated November 28, 2015 drawn on debtor's WF Checking Account ("Check"). Copies of the Note and the Check are attached hereto as Exhibit 2.

4. That terms of the Note provide for interest at the rate of 4% per annum and monthly payments of $1,740.00 commencing April 16, 2016.

5. That the debtor filed a chapter 7 bankruptcy petition with this Court on June 10, 2016. Tom C. Smith was appointed Trustee of the Bankruptcy Estate. The first Meeting of Creditors Hearing was concluded on July 19, 2016.

6. That the debtor filed a Schedule C with his Bankruptcy Petition and exempted pursuant to Virginia Code Section 65.2-531 the following assets:

    A) Checking account - Wells Fargo - $8,062.00, Virginia Code Section 65.2.-531

2

> B) Savings - Capital One 360 - $5,045.50 - Virginia Code Section 65.2-531
>
> C) Business loan to Pro Tax, LLC - $87,545.50 - Virginia Code Section 65.2-531

7. That the Trustee filed an Objection to the debtor's exemptions claimed pursuant to Virginia Code Section 65.2-531. The Objection was filed with the Court on July 28, 2016.

8. That the Court conducted a Hearing on September 1, 2016 to consider and act upon the Trustee's Objection to Exemptions. At the hearing the debtor's attorney stated to the Court that the debtor's exemptions in the WF Checking Account and the Business Loan to Pro Tax, LLC were proper because the funds in the bank accounts and the funds lent to Pro Tax, LLC were funds derived from his workman's compensation settlement. The Trustee indicated to the Court that he did not wish to pursue his objection to the debtor's exemption for the debtor's bank account but the Trustee believes the debtor should not be permitted to exempt the funds lent to the debtor by Pro Tax, LLC pursuant to Virginia Code Section 65.2-531.

*See* Stip. of Facts ¶¶ 1-8 (Docket entry 14).[2] The Trustee argues that the Virginia General Assembly limited the exemption of traceable workers' compensation benefits to shares purchased in a credit union and deposits held by a financial institution; thus, the Debtor is prohibited from extending the exemption to the proceeds of the business loan made using his workers' compensation funds. *See* Tr.'s Memo. at 2. The Debtor argues that Virginia Code Ann. § 65.2-531 is intended to be a remedial statute and should be liberally construed in favor of the injured worker. Debtor's Resp. at 2 (citing *Barker v. Appalachian Power Co.*, 163 S.E.2d 311, 314 (Va. 1968)). The Debtor represents that the only reported case applying Virginia Code Ann. § 65.2-531 concluded that the statute does not restrict the exemption status for workers' compensation funds to the initial proceeds.

---

[2] While Paragraph 8 of the Stipulation of Facts references "funds lent to the *debtor* by *Pro Tax, LLC*" (emphasis added), the Court believes such reference constitutes a typographical error by the parties. The Court will construe this stipulation to reference the loan *by* the Debtor *to* Pro Tax, LLC.

*Id.*; *see In re Nelson*, 179 B.R. 811 (Bankr. W.D. Va. 1994). The Debtor disagrees with the limitations that would result from the Trustee's interpretation of the statute, noting that the statute's examples pertain only to instances where the workers' compensation payment is commingled with other funds. Debtor's Resp. at 3-4.

## II. CONCLUSIONS OF LAW

### A. The Statute

The parties agree that the applicable statute in this matter is Virginia Code Ann. § 65.2-531. Entitled "Assignments of compensation; exemption from creditors' claims," the pertinent portion of the statute provides:

> A. No claim for compensation under this title shall be assignable. **All compensation and claims therefor shall be exempt from all claims of creditors, even if the compensation is used for purchase of shares in a credit union, or deposited into an account with a financial institution or other organization accepting deposits and is thereby commingled with other funds.** However, benefits paid in compensation or in compromise of a claim for compensation under this title shall be subject to claims for spousal and child support subject to the same exemptions allowed for earnings in § 34-29.

Va. Code Ann. § 65.2-531(A) (2016) (emphasis added). The parties disagree, however, regarding the proper interpretation of the statute, and specifically whether the statute may serve as the basis for exempting property acquired by a debtor's workers' compensation funds.

### B. *In re Nelson*

While the issue presently before the Court is the subject of few opinions, our sister court in the Western District of Virginia has addressed the issue. Judge Pearson provides an in depth discussion of Virginia Code Ann. § 65.2-531 in *In re Nelson*, 179 B.R. 811 (Bankr. W.D. Va. 1994). The debtor in *Nelson* sought to exempt a mobile home and a lot, both purchased using workers' compensation benefits, under Virginia Code Ann. § 65.2-531. *In re Nelson*, 179 B.R. at 811. The

4

chapter 13 trustee objected to the exemption, arguing that because the workers' compensation benefits had been invested in the mobile home and the lot, the resulting investments did not retain an exempt status under the Virginia statute. *Id.*

"The rule of liberally construing a remedial statute like [Virginia Code Ann. § 65.2-531] in favor of the debtor is recognized in Virginia as it pertains to the Virginia exemption statutes." *Id.* at 812 (citing *In re Smith*, 22 B.R. 866, 867 (Bankr. E.D. Va. 1982)). The Court acknowledged, however, that it must be mindful to "'neither reduce nor enlarge the exemptions or read into the law an exemption not found there.'" *Id.* (quoting *Goldburg Co. v. Salyer*, 50 S.E.2d 272, 277 (Va. 1948)).

With these rules in mind, Judge Pearson concluded:

> Section 65.2-531 is explicit and unambiguous. It simply states that no claim for compensation and all compensation and claims therfor shall be exempt from all claims of creditors. It does not say that once the funds are invested in other properties they become nonexempt. That construction cannot be read into the statute, which would be in violation of the authorities hereinabove cited. The Court must also conclude that if the legislature had so intended, it would have so provided.

*Id.* The Court concluded that the mobile home and lot purchased with the proceeds of the debtor's workers' compensation benefits were exempt properties under Virginia Code Ann. § 65.2-531. *Id.*

The Court finds that the result in *In re Nelson* is supported by the plain language of the statute. Subject to the enumerated limitation regarding spousal and child support, Virginia Code Ann. § 65.2-531 allows for the exemption of workers' compensation benefits regardless of the recipient's use of those funds. While the Trustee would deny the Debtor his exemption by arguing that the Virginia General Assembly limited the exemption to the workers' compensation funds themselves, shares in a credit union, or a deposit into a financial account, the Trustee reads limitations into the statute that are not there. *Id.* (citing *Goldburg*, 50 S.E.2d at 277). A liberal,

plain language reading of the statute prohibits the Court from grafting the limitations onto it as suggested by the Trustee. *See In re Evans*, 543 B.R. 213, 220 (Bankr. E.D. Va. 2016 (St. John, C.J.)), *aff'd*, Case No. 4:16cv17, 2017 WL 150247 (E.D. Va. Jan. 13, 2017). This Court cannot limit the Debtor's exemption when it is rightfully provided to him by the clear and unambiguous statutory language. Rather, the statute's unambiguous wording requires the Court to conclude that the Virginia General Assembly allowed for the broad exemption of workers' compensation benefits, despite its subsequent conversion or investment. *S. Bank & Tr. Co. v. Alexander* (*In re Alexander*), Adv. Proc. No. 13-07146-SCS, 2014 WL 3511499, at *9 (Bankr. E.D. Va. July 16, 2014), *aff'd*, 524 B.R. 82 (E.D. Va. 2014) ("A court's inquiry often begins and ends with plain language because when 'the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

C. *In re Williams* and *In re Gardiner*

The *Nelson* opinion relied heavily on a decision from the United States District Court for the District of New Hampshire, *In re Williams*, 171 B.R. 451 (D.N.H. 1994). The debtor there suffered a workplace injury and later received a $36,000.00 lump sum workers' compensation award, a portion of which he used to purchase a vehicle. *In re Williams*, 171 B.R. at 452. The debtor initially scheduled the vehicle as an asset but later sought permission to amend his schedules to exempt the vehicle under New Hampshire's workers' compensation law (the "New Hampshire law").[3] *Id.* The

---

[3] The New Hampshire law provides:

I. Claims for compensation under this chapter shall not be assignable, and the compensation and any claim for compensation shall be exempt from all claims of creditors except as provided in this section. Claims for payment by physicians, hospitals, and for other remedial care chargeable to the employee

6

chapter 7 trustee objected to the debtor's attempted exemption of the vehicle, which the Bankruptcy Court sustained, holding that "the car was not exempt because the benefit exemption provided by [New Hampshire's statute] did not extend to tangible assets purchased with benefit funds." *Id.*

Noting that the New Hampshire law is liberally construed in favor of the injured worker, the District Court found that "[b]enefits paid under New Hampshire's Workers' Compensation Law are meant to compensate for loss of earning capacity. Those payments represent, or substitute for, future earnings that would have been available to an injured worker and his or her family, but for the workplace injury." *Id.* at 453 (citations omitted). The Court reasoned that, if the exemption statute was construed narrowly, the simple act of depositing workers' compensation benefits into a bank account would affect the character of the payment, and injured workers "would be incapable of putting their exempt benefits to practical use if the exemption dissolved upon negotiation of the benefit check itself, or upon its conversion into useful form, such as a bank demand deposit." *Id.* at 453-54. Reversing the Bankruptcy Court's earlier ruling, the District Court concluded that the vehicle purchased with workers' compensation benefits was exempt under the New Hampshire law. *Id.* at 454. The District Court found no basis upon which to distinguish a bank deposit comprised of workers' compensation benefits and a vehicle purchased using those funds: "In each case, identifiable benefits are simply converted from one form of asset to another. In the latter example,

---

        and rendered in connection with a compensated injury and claims of attorneys for services rendered an employee in prosecuting a claim under this chapter, when approved by the superior court, may be enforced against the compensation award in such manner as the superior court may direct.

II.    Claims for child support payments, pursuant to RSA 458-B, may be enforced against compensation awards.

N.H. Rev. Stat. Ann. § 281-A:52 (2016).

7

the conversion would be entirely consistent with the benefit's purpose . . . ." *Id.* The *Williams* Court acknowledged that workers' compensation benefits are expected to be used for "useful purposes, such as buying food, clothing, shelter, transportation, and other necessities . . . ." *Id.* Such benefits would be "'next to futile' if [the statute] operated only as a shield for benefits held in the form of a payment check, or a demand deposit in a bank, but did not shield the things bought with the money made available." *Id.* (internal citation omitted).

Similarly, the debtor in *In re Gardiner*, 332 B.R. 891 (Bankr. S.D. Cal. 2005), received approximately $40,000.00 in workers' compensation benefits, which he and his wife used (along with other funds) to purchase a home. *In re Gardiner*, 332 B.R. 891, 892 (Bankr. S.D. Cal. 2005). Following the divorce of the debtor and his wife and the subsequent sale of the home, an amount representing the workers' compensation funds used to purchase the home was returned to the debtor and deposited in his bank account. *Id.* at 892-93. The debtor sought to exempt the amount of the funds returned to him pursuant to California Code of Civil Procedure § 704.160 (the "California law").[4] *Id.* at 893. The chapter 7 trustee objected to the exemption, arguing that the workers' compensation benefits lost their exempt status when the debtor commingled the award with other funds to purchase a home with his now-former wife. *Id.*

Noting that the Bankruptcy Code and California law require exemptions to be construed liberally in favor of the debtor, the Court also reminded that when "'there are ambiguities in the state

---

[4] The relevant portion of California Code of Civil Procedure § 704.160 provides:

[B]efore payment, a claim for workers' compensation or workers' compensation awarded or adjudged is exempt without making a claim. Except as specified in subdivision (b), after payment, the award is exempt.

Cal. Civ. Proc. Code § 704.160 (2016). The referenced subsection (b) of § 704.160 addresses the application of workers' compensation benefits to judgments for child support.

[exemption] law they are to be resolved in favor of the bankrupt unless to do so would do violence to the purpose of the statutory scheme.'" *Id.* at 894 (alteration in original) (quoting *In re Sanford*, 8 B.R. 761, 765 (N.D. Cal. 1981)). However, the Court found California's exemption statute to be unambiguous:

> [The California law] simply states that a workers' compensation award after payment is exempt without any limitations specified. It does not say once the award is invested in other property it becomes nonexempt. The Court cannot read into the statute a restriction that is not there. Presumably if the legislature had intended to place a restriction on a workers' compensation award's exempt status after payment, it would have said so as it did in other exemption statutes.

*Id.* The Court's conclusion was additionally supported by a specific statute allowing the exempt funds to remain so even if those funds are converted from one asset to another, so long as the funds can be traced. *Id.* at 894-95 (citing Cal. Civ. Proc. Code § 703.080). Based on this analysis, the *Gardiner* Court concluded that the debtor's workers' compensation award retained its exemption status, despite the funds having been converted in form multiple times. *Id.* at 895.

Just as in *Nelson*, the analyses espoused in *Williams* and *Gardiner* are equally applicable to the instant case. Both rely heavily on the principles that an exemption statute must be read liberally in favor of the debtor and that the legislative intent, as demonstrated by the statutory language, must control. Both principles should be followed in the instant case. The Court agrees with the Debtor's argument that the statute, read as a whole, merely gives examples of circumstances under which the workers' compensation funds would still be exempt. Debtor's Resp. at 3. The General Assembly's choice of the phrase "even if" in the statute clearly signals, when taken in context with the rest of the statute, examples of situations where the funds would still be considered exempt. The Court must assume that the General Assembly intended "even if" to have "its normal, everyday meaning." *See In re Hasse*, 246 B.R. 247, 253 (Bankr. E.D. Va. 2000); *see also Tate v. Commonwealth*, No.

0042-99-2, 2000 WL 33241661, at *3 (Va. Ct. App. 2000) ("It is a basic rule of statutory construction that a word in a statute is to be given its everyday, ordinary meaning unless the word is a word of art.") (quoting *Stein v. Commonwealth*, 402 S.E.2d 238, 241 (Va. Ct. App. 1991)). The Merriam-Webster Dictionary defines "even if" as: "used to stress something will happen despite something else that might prevent it." *Even if*, Merriam-Webster Dictionary (11th ed. 2017). The Oxford English Dictionary similarly defines the term as: "despite the possibility that; no matter whether." *Even if*, Oxford English Dictionary (3d ed. 2016). These definitions support the contention that the language in Virginia Code Ann. § 65.2-531 is explanatory, rather than limiting, language.[5] As such, the Court finds the Debtor's argument—that the lack of a tracing provision in

---

[5] Although addressing a different Virginia exemption statute, *In re Webb*, 210 B.R. 266 (Bankr. E.D. Va. 1997), provides additional guidance for the Court. The debtor in *In re Webb* sought to exempt, under Virginia Code Ann. § 34-28.1, a $25,000.00 settlement payment that arose from a gender discrimination suit brought against the debtor's former employer. *In re Webb*, 210 B.R. 266, 268 (Bankr. E.D. Va. 1997). The chapter 7 trustee objected to the exemption, arguing that the debtor did not receive the settlement payment from a claim arising from a "personal injury" and that Virginia Code Ann. § 34-28.1 applied only to personal injury claims recognized under state law. *Id.* at 269. Rejecting the chapter 7 trustee's argument that only personal injury actions arising under Virginia law were exempt under the statute, the Court concluded:

> The plain language of [Virginia Code Ann. § 34-28.1] does not distinguish between state and Federal causes of action, or between those recognized at the time the statute was enacted, and those subsequently recognized; it states simply that *all* personal injury causes of action are exempt from creditor process. The use of the descriptive qualifier "all" and the lack of any limiting language strongly suggests that the General Assembly did not intend to create an exemption solely limited to state law causes of action or those causes of action expressly recognized at the time the statute was enacted.

*Id.* at 274 (second alteration in original). Applying analogous reasoning here, the General Assembly's use of "all" to modify "compensation" and "even if" in Virginia Code Ann. § 65.2-53 must be read and considered together. The use of "all" demonstrates that the General Assembly intended for *all* workers' compensation to be exempt from creditors' claims. The phrase "even if," in its normal convention, indicates that, despite the usage of the funds in either

10

Virginia Code Ann. § 65.2-531 does not change the result here—to be persuasive. *See id.* The Court must read the statute to allow the Debtor to exempt his workers' compensation proceeds despite those proceeds being invested and converted into a different asset.[6] A literal reading of the statute necessitates this determination.

Additionally, both the *Williams* and *Gardiner* decisions are grounded in the overriding public policy that workers' compensation proceeds should be available for workers to support themselves and their dependents. Workers' compensation awards replace a steady income stream that is lost due to a workplace injury. In turn, that award may be used to supply the injured worker with necessary food, clothing, and shelter. *See In re Williams*, 171 B.R. at 454; *see also In re Gardiner*, 332 B.R. at 894-95 (relying on the reasoning in *In re Williams*). Although the loan the Debtor here

---

of the delineated examples, the totality of the funds will remain exempt. Further, there is no evidence to support the Chapter 7 Trustee's argument that the examples listed in the statute are the *only* examples of what a debtor may do with a workers' compensation award, once received, without defeating the exemption. The Trustee's argument appears to rely upon the statutory interpretation principle *expressio unius est exclusio alterius*, which "'justif[ies] the inference that items not mentioned were excluded by deliberate choice, not inadvertence.'" *United States v. Garcia-Ochoa*, Nos: 2:08cr104, 2:08cr153, 2009 WL 331282, at *10 n.6 (E.D. Va. Feb. 9, 2009) (alteration in original) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). However, this principle "is fallible and is but a guide that can be overcome by 'contrary indications that adopting a particular statute was probably not meant to signal any exclusion of its common relatives.'" *Id.* (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)). The wording of the statute and the well-established principle of liberal statutory construction regarding exemption statutes indicate the General Assembly did not intend for its enumerated examples to signal an exclusion of other similar possibilities. Accordingly, this reading of the statute gives meaning to the totality of its language and upholds the principle of liberally construing the statute in favor of the debtor.

[6] Based on the reasoning above, the Court believes, based on the totality of the statutory language, that the Debtor may rightfully exempt the business loan made to Pro Tax, LLC. However, even if the statute is ambiguous, "where there is doubt as to whether property is exempt, it should be resolved in favor of the exemption." *In re Foster*, 556 B.R. 233 n.14 (Bankr. E.D. Va. 2016) (citations omitted).

11

made to ProTax, LLC, is a unique way of utilizing such proceeds, investing workers' compensation proceeds in the form of a business loan is analogous to the investment examples in Virginia Code Ann. § 65.2-531.[7] If the Court adopted the Trustee's reasoning and restricted the Debtor's use of the funds, such result would limit an injured debtor's ability to provide for himself, rather than provide the intended remedy. It would be antithetical to the purpose of workers' compensation to argue that the Debtor cannot now use his exemption because the proceeds were converted into another asset. The exemption would perish once a debtor invested or converted his workers' compensation award into a different asset. For these reasons, the Court adopts the rationale set forth in *Williams* and *Gardiner* and likewise concludes that reading the statute to disallow an exemption based on an asset conversion would be inconsistent with the underlying purpose of such exemption statutes. *See In re Gardiner*, 332 B.R. at 895; *In re Williams*, 171 B.R. at 454-55. The Debtor's use of the workers' compensation proceeds to make a business loan to ProTax, LLC, is indistinguishable from using such funds to purchase a mobile home, an automobile, or a house. Any other reading of Virginia Code Ann. § 65.2-531 would render the statute useless to those it serves to protect.

### D. Other Fourth Circuit Cases

A survey of Fourth Circuit case law provides additional support for the result in this case. In Maryland, the workers' compensation exemption statute allows a debtor to exempt compensation paid "in the event of sickness, accident, injury, or death of any person, including compensation for

---

[7] Lending the workers' compensation proceeds to ProTax, LLC, presumably allows the Debtor to presumptively yield a higher return on funds than available from a bank. As these funds are intended to help support the Debtor for a long period of time, it is expected that the Debtor find ways to improve his financial position using those funds. The loan to Pro Tax, LLC, is no different than the Debtor investing his money in a portfolio or interest-bearing savings account.

12

loss of future earnings." Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(2) (2016). In *In re Massenburg*, 508 B.R. 362 (Bankr. D. Md. 2014), Judge Catliota employed the liberal construction principles espoused in the three aforementioned cases and determined that a deposit of exempt funds into a commingled account did not affect the debtor's exemption rights in those funds. *In re Massenburg*, 508 B.R. 362, 365, 369 (Bankr. D. Md. 2014). Although *In re Massenburg* construed a different subsection of Maryland's exemption statute (subsection (h), which addresses qualified pension plan payments), the Bankruptcy Court uncategorically pronounced, "Neither the legislature nor the court can control what a debtor does with exempt funds." *Id.* Examining the same statute in *Wolff v. Gibson* (*In re Gibson*), 300 B.R. 866 (D. Md. 2003), the District Court affirmed the Bankruptcy Court's determination that the exempt status of a debtor's interest in a tax exempt retirement account did not expire immediately upon distribution of account funds to the debtor or when the debtor had not rolled over the funds to an exempt individual retirement account at the time of bankruptcy filing but later did so within the statutorily permitted time frame. *Wolff v. Gibson* (*In re Gibson*), 300 B.R. 866, 871 (D. Md. 2003). The Court based its determination on the broad language of the exemption statute, as well as its underlying purpose: "to ensure that workers have sufficient funds with which to support themselves and their dependents during their retirement years." *Id.* (citing *Solomon v. Cosby* (*In re Solomon*), 67 F.3d 1128, 1133 (4th Cir. 1995)).

These cases provide further analytical support for the decision in the instant case. First, *In re Massenberg* makes clear that it is not in the purview of a court to determine what a debtor should or should not do with his workers' compensation proceeds. Rather, a court must interpret the exemption statute as written. Here, § 65.2-531 clearly places no restrictions or conditions on a debtor's use of exempt workers' compensation proceeds, except as set forth in subsection (A)

regarding claims for spousal and child support. *See* Va. Code Ann. § 65.2-531(A) ("[B]enefits paid in compensation or in compromise of a claim for compensation under this title shall be subject to claims for spousal and child support subject to the same exemptions allowed for earnings in § 34-29."). If the Virginia General Assembly intended to additionally restrict or otherwise regulate a debtor's use of exempt funds, the legislature certainly could have included such limitations in the statute. *See In re Nelson*, 179 B.R. at 812 ("[Virginia Code Ann. § 65.2-531] does not say that once the funds are invested in other properties they become nonexempt. That construction cannot be read into the statute, which would be in violation of the authorities hereinabove cited. The Court must also conclude that if the legislature had so intended, it would have so provided."). The purpose of § 65.2-531 is to ensure that injured debtors have sufficient funds to support themselves and their dependents. Accepting the Trustee's argument that the Debtor's use of the workers' compensation proceeds to make a loan results in a loss of the exempt status of the loan's proceeds would contravene that purpose.[8]

---

[8] Within the Fourth Circuit, only West Virginia's interpretation of its exemption statute parallels the Trustee's argument that the Debtor is prohibited from extending his exemption to a business loan. West Virginia's statute, West Virginia Code § 23-4-18, exempts workers' compensation paid to employees or their dependents from creditor claims but does not provide specific examples like those enumerated in the Virginia statute. *See* W. Va. Code Ann. § 23-4-18 (2016) ("Except as provided by this section, compensation shall be paid only to the employees or their dependents and is exempt from all claims of creditors and from any attachment, execution or assignment other than compensation to counsel for legal services . . . ."). The Supreme Court of Appeals of West Virginia has held that the debtor's placement of a workers' compensation award in a certificate of deposit (a "CD") divested the proceeds of its statutory exemption. *Feliciano v. McClung*, 556 S.E.2d 807, 811 (W. Va. 2001). Although the court "acknowledge[d] that the distinction between a bank account and 'an investment' is exceedingly fine," the court determined that the debtor's investment of his workers' compensation award in a CD was, under the facts in that case, inconsistent with the award's original purpose, and stripped the award of its statutory exemption protection to allow the plaintiff to recover on her personal injury judgment against the debtor. *Id.* at 810-11. This Court has concluded, however, that the Debtor's use of his workers' compensation proceeds to make a business loan to Pro Tax, LLC, does not change the character of the compensation in a way that

E. Case Law Relied Upon by the Chapter 7 Trustee

In his Memorandum, the Trustee cites two cases from the United States Bankruptcy Court for the Western District of Michigan and two cases from Florida (one, a bankruptcy decision and the other, a state court opinion) that he argues dictate a different result. The Trustee's reliance on the holdings of these cases is misplaced given the applicable law and the facts presented in the instant case.

In *In re Williams*, 181 B.R. 298 (Bankr. W.D. Mich. 1995), the Court disallowed a debtor's exemption pursuant to 11 U.S.C. § 522(d)(11)(D) in cash and certain assets (a vehicle and sporting equipment) acquired with workers' compensation proceeds. *In re Williams*, 181 B.R. 298, 301 (Bankr. W.D. Mich. 1995). The Court determined that, based upon the legislative history of the Code subsection, the exemptions under § 522(d)(11)(D) applied only to compensation received as a result of tort liability. *Id.* at 300. Although the Court explained that § 522(d)(10)(C) allows a debtor to exempt a workers' compensation award, that Code section applies only to the right to receive the award itself, not to traceable assets purchased with funds from a workers' compensation award. *Id.* at 301.[9] Section 522(d)(10)(C) was thus inapplicable because the debtor had already received the workers' compensation award. *Id.* at 301-02. Since *In re Williams* addresses federal

---

makes it inconsistent with the purpose of Virginia's exemption statute. The business loan made by the Debtor to Pro Tax, LLC, is an investment, for which the Debtor is repaid $1,740.00 per month at an annual interest rate of 4.00%. This provides the Debtor with a continued source of support, which is the purpose of statutorily protecting workers' compensation proceeds from creditors.

[9] "[T]he plain language of [11 U.S.C.] § 522(d)(10) and the contrasting language of 11 U.S.C. § 522(d)(11) (permitting exemption of 'property that is traceable to' certain assets), dictate that only a debtor's *right to receive* a benefit to which § 522(d)(10) applies, and not benefits already received prepetition, can be claimed exempt under § 522(d)(10)." *In re Kemp*, No. 09-00907, 2011WL 4434996, at *1 (Bankr. D.D.C. Sept. 22, 2011) (alteration in original) (quoting *In re Cesare*, 170 B.R. 37, 39 (Bankr. D. Conn. 1994)).

15

law exemptions, it is not directly on point with the instant case, which involves the Debtor's use of a state law exemption. Substantively, however, the Trustee bases his argument on the existence of a tracing provision contained in § 522(d)(11)(D), upon which *In re Williams* relies, and the lack of such provision in Virginia Code Ann. § 65.2-531.[10] As explained above, however, such provision is unnecessary due to the breadth of the Virginia exemption statute.

The Trustee also relies on *Lasich v. Wickstrom* (*In re Wickstrom*), 113 B.R. 339 (Bankr. W.D. Mich. 1990), where the Bankruptcy Court held that the debtor could not exempt property (*e.g.*, a marital home, held as tenants by the entireties, and a recreational camp) that he preferentially transferred to his parents and his son prior to filing his bankruptcy petition. *Lasich v. Wickstrom* (*In re Wickstrom*), 113 B.R. 339, 351-52 (Bankr. W.D. Mich. 1990). *Wickstrom* is factually distinguishable from the instant case because it involves a debtor making preferential transfers prior to filing bankruptcy; thus, the Court concluded that the debtor lost his ability to exempt the property upon the transfer. *Id.* at 345-46. Further, the Michigan exemption statutes at issue in *Wickstrom* limit the exemption to benefits yet to be received by an injured individual; once received, those

---

[10] Federal exemptions pursuant to § 522 of the Bankruptcy Code are not applicable to Virginia debtors. "If a state chooses to opt out of the federal exemption scheme detailed in 11 U.S.C. § 522(d), 'any property that is exempt under . . . State or local law' is excluded from the estate. Because the Commonwealth of Virginia has opted out of the federal exemption scheme, . . . [the debtor] had to claim his exemptions in compliance with Virginia law." *Mayer v. Nguyen* (*In re Nguyen*), 211 F.3d 105, 107 (4th Cir. 2000) (citing Va. Code Ann. § 34-3.1) (additional internal citations omitted).

benefits lose the ability to be exempted.[11]  *Id.* at 344.  No such limitation exists in the Virginia exemption statute.

The two Florida cases cited by the Trustee are also distinguishable from the instant case.  In *Jensen v. Captiva Limousine Service* (*In re Rajkovic*), 289 B.R. 197 (Bankr. M.D. Fla. 2002), the Bankruptcy Court disallowed the exemption of a debtor's workers' compensation funds, which the debtor preferentially transferred to a corporation held by the debtor, his wife, and children prior to filing his chapter 7 bankruptcy.  *Jensen v. Captiva Limousine Serv.* (*In re Rajkovic*), 289 B.R. 197, 201 (Bankr. M.D. Fla. 2002).  The Bankruptcy Court in *Jensen* determined that the debtor could not exempt his workers' compensation funds because the debtor's preferential transfer of the funds to his corporation prepetition constituted a voidable transfer under 11 U.S.C. § 548(a)(1)(B).  *Id.*  Any other outcome, the Court determined, would run counter to the underlying purpose of the state exemption statute.  *Id.*  Unlike the debtors in *Wickstrom* and *Jensen*, there was no preferential transfer of workers' compensation funds by the Debtor in the instant case.

In *Sullo v. Cinco Star, Inc.*, 755 So. 2d 822 (Fla. Dist. Ct. App. 2000), the District Court of Appeals affirmed the circuit court's decision that Florida's statute exempting workers' compensation proceeds did not extend to funds pledged by the debtor as collateral for a loan.  *Sullo v. Cinco Star, Inc.*, 755 So. 2d 822, 823 (Fla. Dist. Ct. App. 2000).  The Trustee's reliance on *Sullo* is also inapplicable given the facts in the instant case.  In *Sullo*, the petitioner lost his ability to exempt his

---

[11] Unlike the *Williams* case decided by the same court, the debtors in *Wickstrom* claimed property as exempt under state law.  Section 522(b)(1) of the Bankruptcy Code allows a debtor to chose between using either a state's exemption provisions or the federal exemption statute, § 522(d), unless a state specifically "opts out" of the federal exemption scheme.  *See* 11 U.S.C. § 522(b)(2) (2016).  In Michigan, a debtor has his choice between federal or state law exemptions.  *In re Wickstrom*, 113 B.R. at 348.  The debtors in *Wickstrom* elected to exempt their property under Michigan state law because there was no federal exemption regarding entireties properties.  *Id.* at 343.

17

workers' compensation proceeds because he specifically pledged a certificate of deposit acquired with those proceeds. *Id.* Once the certificate of deposit was pledged as security for the loan, the petitioner lost the ability to claim an exemption in it, despite the source of the funds for the purchase being traceable to the workers' compensation proceeds. *Id.* The Debtor here did not pledge his workers' compensation funds as collateral; he invested them.[12] The Trustee notes in his own Memorandum the *Sullo* court's pronouncement that a recipient of workers' compensation proceeds is unrestricted in the use of those proceeds. Tr. Memo. at 4; *see also Sullo*, 755 So. 2d at 823 ("Once workers' compensation benefits have been received by a beneficiary, no statutory restrictions apply to the use of those benefits by the beneficiary. The beneficiary may preserve or squander the proceeds; he or she is in total control."). Such principle holds especially true in the instant matter, where the applicable statute does not restrict the ability to exempt workers' compensation funds if they are converted into another asset. Therefore, the Court concludes this principle must be followed in this case.

## III. CONCLUSION

For the reasons stated above, the Court concludes that the Debtor's use of his workers' compensation proceeds to make a business loan to Pro Tax, LLC, is proper, and the Debtor may properly exempt the asset, scheduled as a business loan, under Virginia Code Ann. § 65.2-531. Accordingly, the Court finds that the Trustee's Objection to Debtor's Claims of Homestead Exemption should be OVERRULED.

A separate order will be issued consistent with these findings.

---

[12] Given the breadth of the Virginia exemption statute here, it is unclear that a subsequent pledge of proceeds traceable to a workers' compensation award would defeat the exemption. However, that question is not presented by the instant matter.

The Clerk is ORDERED to forward a copy of this Memorandum Opinion to Tom C. Smith, Jr., Chapter 7 Trustee, and Edward J. Sargent, counsel for Mr. Apfel.

Entered this 16th day of February, 2017, at Norfolk, in the Eastern District of Virginia.

Date: Feb 16 2017

STEPHEN C. ST. JOHN
Chief United States Bankruptcy Judge